UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

IN RE:

PAR INDUSTRIAL CORPORATION           Bankruptcy No.: 93-20298

    Debtor

---

NITRO CORPORATION,

    Plaintiff/Appellee,                Civil Action No.: 2:06-1048
                                     Lead A.P. No.: 00-0128
v.

PAR INDUSTRIAL CORPORATION,

    Defendant/Appellant.

---

TOTAL DISTRIBUTION, INC.,

    Plaintiff/Appellee,                Consolidated A.P. No.: 00-0203

v.

PAR INDUSTRIAL CORPORATION,

    Defendant/Appellant.

MEMORANDUM OPINION AND ORDER

Pending is the appeal of Par Industrial Corporation ("Par") of the September 8, 2006, order of the bankruptcy court in which the bankruptcy court granted the motion for summary judgment of plaintiff Nitro Corporation ("Nitro") and permitted Nitro to enforce the sale by Par to Nitro of property described in two options to purchase.

FILED IN CHARLESTON
U.S. BANKRUPTCY COURT

2010 OCT -4 A 10: 44

SOUTHERN DISTRICT
WEST VIRGINIA

CHARLESTON
PTCY COURT

'0: 44

I.

On September 4, 1987, Par and Nitro entered into a contract ("Option I") in which Nitro had a two-year option to purchase a parcel of real estate from Par. (Bankr. Ct. Order at ¶¶ 1-2). On the same day, Par and Nitro entered into a second two-year option ("Option II") for a second parcel of real estate. (Id. at ¶¶ 3-4). Both options provided that Par would "grant and convey good and marketable title to the Property . . . by an apt and proper deed of conveyance containing covenants of general warranty and against liens and encumbrances" and bear "any costs necessarily incurred in connection with perfecting title." (Id. at ¶¶ 22-23).

By letter dated August 30, 1989, Nitro notified Par that it intended to exercise Option I. (Id. at ¶ 5). By the same letter, Nitro also confirmed a verbal agreement made the same day that Par would extend Option II through September 4, 1991, in consideration for Nitro's permission for Par to continue to use the property subject to a 90-day termination notice. (Id. at ¶¶ 6-7).

The closing on the Option I property was delayed due to Par's delinquent real estate problem. (Ltr. from M. Diane Neal

2

Case 2:00-ap-00128   Doc 44   Filed 10/01/10   Entered 10/04/10 16:40:06   Desc Main
Document      Page 3 of 17

to Par at 1 (Sept. 27, 1989) (noting "the delinquent real estate tax problem.")). That continued to be the case due to the delinquency and the sale of the property to the State of West Virginia. (Ltr. from M. Diane Neal to Par at 1 (Jul. 5, 1989) (noting the continuing "real estate tax delinquency" and the "sale of the property to the State of West Virginia")).

Counsel for Par, John Poffenbarger, notified Nitro on November 5, 1990, that Par wished to close on both parcels at the same time. (Record at 264). The author of the September 27, 1989, letter from Nitro, M. Diane Neal ("Neal"), who served as vice-president and counsel for Nitro, responded on November 13, 1990, stating:

> It is my understanding that the closing on the purchase of the 1.96 acre tract (known as Option I) scheduled for November 13, 1990 cannot take place because of your client's desire to also close on the additional 1.96 acres (known as Option II). As I have indicated to you on a number of occasions and as the previous correspondence reflects, we are not prepared at this time to close on Option II.

(Bankr. Ct. Order at ¶ 8).

On June 10, 1991, Nitro confirmed a May 2, 1991, conversation regarding the immediate purchase of Option I and advised Par that it still was not prepared to proceed with the purchase of Option II. (Id. at ¶ 9). On September 26, 1991,

3

Nitro again reaffirmed its intentions to close on Option I "at any time." (Id. at ¶ 10). It also noted that it "may also be interested in closing soon on the second option as well." (Id.).

In his letter of October 1, 1991, the president of Par reminded Nitro that "the real estate options must both close at the same time. . . . The expiration of said closing is December 31, 1991." (Id. at ¶ 11). Nitro responded by its letter to Par on October 16, 1991, stating that it was "prepared to close on both options on any mutually convenient date in December 1991." (Id. at ¶ 12).[1]

Despite Nitro's October 16, 1991, response, the closing did not occur in December 1991. (Id. at ¶ 13). On August 26, 1992, Neal wrote to Par on behalf of Nitro, stating:

> As you are fully aware, we have attempted to schedule a closing on the purchase of the land in the first option since August of 1989. Although we are aware that Par Industrial Corporation is embroiled in a number of serious problems, including federal tax liens, litigation with the City of Nitro and delinquent property taxes, these difficulties do not justify your failure or refusal to proceed with the sale of the property as agreed.

(Id.).

---

[1] The bankruptcy court made no findings concerning the expiration or exercise of Option II. While the bankruptcy judge regarded this letter exchange as a modification of the sales contract respecting the Option I property, it can be treated as a new contract to permit the late exercise of Option II, which technically lapsed at the close of September 4, 1991, which exercise then occurred on October 16, 1991.

4

Par filed a Chapter 11 bankruptcy petition on May 10, 1993. (Id. at ¶ 14). After moving on July 14, 1994, to allow the debtor to compromise a claim with the City of Nitro ("City") through the execution and recordation of a note and deed of trust in favor of the City, and moving again for that same relief on May 21, 1997, the bankruptcy court granted the requested relief on July 30, 1997. (Id. at ¶ 18).

Three years elapsed after the Chapter 11 filing until Nitro "renewed" its exercise of the options in a letter dated May 30, 1996.[2] (Id. at ¶ 15). When by November 4, 1996, Par had not yet responded to Nitro's renewal, Neal advised Par's attorney that there had been no response from Par. (Id. at ¶ 16). Nitro filed the lead adversary proceeding 3 1/2 years later on June 21, 2000. (Id. at ¶ 19). Shortly thereafter, a Chapter 11 plan was

---

[2]The May 30, 1996, letter provides in pertinent part as follows:

> Our records reflect that for a number of years, Total Distribution, Inc. has attempted to purchase the two adjacent parcels of property . . . upon which Par . . . granted options to purchase. Despite previous notices of the intention to exercise these options and the scheduling of closing dates, we have been unable to close upon these purchases.
>
> Therefore, please accept this letter as a renewal of the exercise of the aforesaid options to purchase the property at the earliest possible date. Please respond at your earliest convenience.

(Ltr. from M. Diane Neal to Par at 1 (May 30, 1996)).

5

confirmed on July 26, 2000. Total Distribution then filed its adversary proceeding on October 31, 2000. Par's bankruptcy case was closed on January 12, 2001. (Id. at ¶ 20). The order closing the case acknowledges the pending adversary proceedings. No further action was taken for 5 1/2 years until Nitro inquired of the status of the adversary proceedings, resulting in the appealed order of September 8, 2006.

In support of its motion for summary judgment before the bankruptcy court, Nitro contended that it exercised Option I by letter dated August 30, 1989, and that Par breached its contract with Nitro when it failed to close on the option. (Id. at ¶ 21). Par responded that "[i]t is unclear why the contracts did not close before December 31, 1991, except that it is clear that the Plaintiff would not have received a clear title from the Defendant." (Id. at ¶ 30 (emphasis added)).

The bankruptcy court rejected Par's argument as "disingenuous" because the "record includes numerous attempts by Nitro to close on both options." (Id. at ¶ 31). Furthermore, it found that "[i]nasmuch as the establishment and delivery of clear title was wholly within Par's ability and duty under the contract, any attempt to excuse its actions by asserting that Nitro 'would not have received a clear title' is without merit." (Id. at ¶ 32).

6

The bankruptcy court concluded that Nitro exercised Option I on August 30, 1989 and that a binding contract ("Sales Contract") was formed at that time. (Id., Conclusions at ¶ 1-2). The court further concluded that on October 1, 1991, and October 16, 1991, Par and Nitro, respectively, agreed in their written exchange upon two modifications to the Sales Contract, namely, that (1) the two parcels referred to as Options I and II would be closed together, and (2) the closing date would expire on December 31, 1991.[3] (Id., Conclusions at ¶ 3).

Thus, the court found that Par breached its contract with Nitro on December 31, 1991, when it failed to close on the Sales Contract as modified. (Id., Conclusions at ¶ 5). It also found that Par further breached the Sales Contract when it allowed a deed of trust to be recorded on the properties by the City, thereby preventing the transfer of clear title. (Id., Conclusions at ¶ 6). It is noteworthy that Par, in its brief on appeal, acknowledges that there was a real estate tax claim in the amount of $445,531.78 and that Nitro "understood the problem with closing due to the real estate taxes that were due and could not be paid out of the sales proceeds." (App'ant's Br. at 18).

---

[3] Inasmuch as the bankruptcy court found that the October 1, 1991, and October 16, 1991, correspondences modified the Sales Contract, it expressly rejected the construction of that correspondence as a new offer to sell and an acceptance thereof. (Id., Conclusions at ¶ 4).

7

Par asserts that even if Option I was exercised by the August 30, 1989, letter, the adversary proceeding filed on June 21, 2000, was initiated more than ten years after the contract was created and, therefore, the contract was unenforceable under West Virginia Code section 55-1-1.[4]  (Id., Conclusions at ¶ 24-25).  Nitro countered that West Virginia Code section 55-2-6 was the governing statute and, under that section, the statute of limitations began to run on December 31, 1991, when Par breached its agreement.  (Id. at ¶ 26.).

In the course of adopting the position advanced by Nitro, the bankruptcy court relied upon McKenzie v. Cherry River Coal & Coke Co., in which the West Virginia Supreme Court of Appeals held that the statute of limitations, under West Virginia Code section 55-2-6, begins to run when the breach of contract occurs or when the act breaching the contract becomes known. (Id. at ¶ 27 (citing McKenzie, 195 W. Va. 742, 749, 466 S.E.2d 810, 817 (1995)).  Thus, the bankruptcy court, having previously found that the breach occurred on December 31, 1991, concluded that Nitro had filed its action within the ten year limitations period. (Id., Conclusions at ¶¶ 5, 7)

---

[4] Neither Par's brief nor the bankruptcy court's opinion explain or elaborate upon Par's reliance on West Virginia Code section 55-1-1, which relates to the statute of frauds.

8

In addition to granting Nitro's motion for summary judgment, the bankruptcy court ordered that Nitro was entitled to enforce its options without the imposition of interest. (Id. at Order of Relief). Furthermore, it directed Nitro to recognize the lien held by the City. (Id.).

II.

The court is vested with jurisdiction pursuant to 28 U.S.C. § 158. Our court of appeals recently summarized the governing standard of review:

> We review a grant of partial summary judgment by the bankruptcy court and the affirmance thereof by the district court de novo. Summary judgment in bankruptcy is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates the standards of Federal Rule of Civil Procedure 56 into bankruptcy proceedings.

United Rentals, Inc. v. Angell, 592 F.3d 525, 530 (4th Cir. 2010).

The Rule 56 standards are well settled. A party is, of course, entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the

elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

Par appeals four aspects of the bankruptcy court's decision, namely, the court's (1) application of principles of contract law; (2) application of the statute of limitations; (3) findings of fact relating to Option II; and (4) grant of specific performance.

A.  Application of Principles of Contract Law

Par contends that the bankruptcy court erred in its application of principles of contract law relating to options in concluding that Nitro "preserved its rights on Option II" before that option expired.  (Appellant Br. 7-8).  Par asserts that Option II expired on September 4, 1989.  (Id.).  As to the parties' verbal agreement to extend Option II through September 4, 1991, which was confirmed in the August 30, 1989, letter, Par contends that the agreement was invalid because it was not written as required by the option contracts.  (Id. at 8-11).  Par then asserts that Nitro in any event failed to exercise Option II before the claimed expiration date of September 4, 1991.  (Id. at

10

8). It supports this assertion by citing to letters sent by Nitro to Par on November 13, 1990, and June 10, 1991, in which agents of Nitro state that Nitro is not yet ready to exercise Option II, coupled with the failure to do so by September 4, 1991. (Id.).

Par's argument is based upon a misunderstanding of the bankruptcy court's order. The bankruptcy court did not find that Nitro preserved its rights on Option II. Nor did the bankruptcy court make any finding on whether Option II was exercised or allowed to expire. As suggested earlier, the bankruptcy court instead found that Nitro exercised Option I on August 30, 1989, thereby forming the Sales Contract, a contract separate and apart from both options, and that the parties modified the Sales Contract, by virtue of their correspondence on October 1 and 16, 1991, to include not only the property and terms originally covered by Option I but also the property and terms originally covered by Option II. (Bankr. Ct. Order, Conclusions at ¶¶ 1-3).

B. Application of Statute of Limitations

Par contends that the bankruptcy court misapplied principles relating to the statute of limitations as set forth in

11

McKenzie in finding that Nitro's claims were not barred. (Appellant Br. 11). Par asserts that Nitro's right to bring the action accrued when Nitro exercised Option I on August 30, 1989. (Id. at 12). Par then engages in a lengthy description of letters between the parties in which closing dates were suggested and changed numerous times, concluding that *no closing date was ever set*, and suggests that this is evidence that Nitro knew "there were problems with 'closing' on options more than ten years prior to this action being brought." (Id. at 12-14).

West Virginia Code section 55-2-6 states that an action based upon a written contract signed by the party to be charged thereby must be brought within ten years of the date upon which "the right to bring the same shall have accrued." The West Virginia Supreme Court of Appeals has interpreted this section to mean that "the statute of limitations begins to run when the breach of the contract occurs or when the act breaching the contract becomes known." McKenzie, 466 S.E.2d at 817.

Although Nitro's rights under the contract of August 30, 1989 (Option I property), and the contract of October 16, 1991 (Option II property) accrued on those dates, its right to bring an action under those contracts did not accrue until Par breached them. Par's breach occurred when it failed to close by

12

December 31, 1991. (Bankr. Ct. Order, Conclusions at ¶ 5). Thus, Nitro's right to commence an action accrued on December 31, 1991. Inasmuch as the lead adversary proceeding was instituted on June 21, 2000, the action was filed within ten years of the date of Par's breach. Accordingly, the court finds that the bankruptcy court correctly applied the governing statute of limitations.

C. Findings of Fact Relating to Option II

Par challenges the bankruptcy court's findings of fact concerning Option II. (Appellant Br. 14-15). Par contends that even if Option II was extended to September 4, 1991, Nitro made no attempt to exercise Option II until Nitro's letter of October 16, 1991. By that letter Nitro accepted Par's demand of October 1, 1991, that both Options close by December 31, 1991.

Whether deemed a modification of the Sales Contract respecting the Option I property, as did the bankruptcy court, or an agreement to extend and close on the Option II property, again under the terms stated in Option II, by December 31, 1991, as does the court on appeal, Par's argument fails.

13

D.  Grant of Specific Performance

Par challenges the bankruptcy court's grant of specific performance on the grounds that twenty years have passed since the options were created, that the value of the property has increased significantly since then, and that it is inequitable for the court to enforce the contract based upon the price set in 1987.  (Appellant Br. 16-18).  In support of this assertion, Par relies on the doctrine of laches, as articulated in Brand v. Lowther, and the fact that eight years passed from the time Nitro first threatened suit to the time that Nitro instituted this action in June, 2000.  (Id. at 18 (citing Brand, 168 W. Va. 726, 285 S.E.2d 474 (1981)).  Par cites Neal's August 26, 1992, letter as Nitro's first threat to sue.  (Id.).

Courts do not grant specific performance of a contract as a matter of right; rather, the court is vested with discretion to determine the right to the remedy dependent upon the facts and circumstances of each case.  Brand, 285 S.E.2d at 479.  The West Virginia Supreme Court of Appeals has described this remedy as:

> an extraordinary act of grace on the part of the court, to be granted only where the plaintiff makes out his case fully, and there is not only no actual fraud or mistake, but there is no hardship or oppression, even though these do not amount to legal or equitable wrong.

14

Id. (quoting Fultz v. Connelly, 139 W. Va. 528, 534, 80 S.E.2d 438, 441 (1954)). To invoke specific performance, generally a party must prove a contract enforceable at law, in writing, certain and fair in its terms, free from fraud or mistake, supported by adequate consideration, and capable of being performed. Id. Furthermore, "the performance granted must be the specific thing called for by the contract." Id.

Laches is "delay which operates prejudicially to another person's rights," and it is a defense to specific performance. Id. at 482 (quoting Carter v. Carter, 107 W. Va. 394, 148 S.E. 378 (1929)). In describing the practical application of this defense, the West Virginia Supreme Court of Appeals has stated:

> Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right.

Id. (quoting Mundy v. Arcuri, 165 W. Va. 128, 267 S.E.2d 454 (1980)).

In Brand, the plaintiff sought to specifically enforce a contract for the sale of capital stock and corporate assets, which contract provided that the transfer was to be made debt-

15

free and the defendant seller was to pay all outstanding taxes. Id. at 476-77. Although the plaintiff made numerous attempts to close the deal, he was repeatedly put off by the defendant. Id. at 478. The plaintiff sought specific performance of the contract, and the defendant raised the defense of laches. Id. at 476. The court found that plaintiff's two-year delay in instituting an action was caused by defendant's attempts to discharge the corporation's tax liability, and it held that "such a delay [did] not present a ground for refusing specific performance." Id. at 482. The court further found that the defendant failed to demonstrate prejudice by the delay other than the mere increase in value of the corporate property. Id. Thus, the court held that the defendant had failed to effectively assert the defense because:

> Equity will not withhold its aid to enforce a contract merely because of the great appreciation of the property sold from causes unknown to and unforeseen by each of the parties at the time the contract was made. . . . . The party asserting the defense of laches must show the prejudice resulting from the delay, otherwise the essential basis for the application of the doctrine of laches is non-existent.

Id. at 483.

Like the delay in Brand, Nitro's delay was caused by Par's failure to clear the title to the property that was the subject of the contract. Such a delay is not grounds for refusing specific performance. Par's attempt to distinguish the

16

facts of <u>Brand</u> from those present here based merely on the length of the delay is unavailing. Any prejudice to Par occasioned by the delay is the consequence of Par's inability to comply with the terms of its agreement to convey the subject property with covenants of general warranty and free and clear of liens and encumbrances. Accordingly, Nitro is entitled to specific performance.

IV.

Based upon the foregoing, it is ORDERED that the order of the bankruptcy court, dated September 8, 2006, be, and it hereby is, affirmed.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Bankruptcy Judge.

DATED: October 1, 2010

John T. Copenhaver, Jr.
United States District Judge

17



A TRUE COPY CERTIFIED ON

OCT - 1 2010

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia
By _____ Deputy